# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| PATRICIA A. NORRIS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:13-CV-259-PRC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Patricia A. Norris on July 30, 2013, and Plaintiff's Brief [DE 17], filed on January 15, 2014. Plaintiff requests that the December 4, 2013 decision of the Administrative Law Judge denying her claims for disability insurance benefits and supplemental security income be reversed for an award of benefits or remanded for further proceedings. On April 23, 2014, the Commissioner filed a response, and Plaintiff filed a reply on May 5, 2014. For the following reasons, the Court denies Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On March 29, 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging an onset date of January 1, 2011. The applications were both denied initially on June 29, 2011, and upon reconsideration on October 13, 2011. Plaintiff filed a timely request for a hearing on November 11, 2011, which was held on June 22, 2012, before Administrative Law Judge ("ALJ") David Skidmore. In appearance were Plaintiff, her attorney, and a vocational expert. The ALJ issued a written decision denying benefits on December 4, 2013, making the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.

2.  The claimant has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date.

3.  The claimant has the following severe impairments: lumbar disc disease, arthritis, depression, and anxiety disorder.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift and carry 10 pounds frequently and 20 pounds occasionally; she can walk, stand, and sit for up to six hours each in an eight-hour workday; she can perform simple, routine tasks such that she can understand, remember and carry out simple work instructions, tolerate occasional changes in the work setting in terms of processes and products, and exercise no more than simple work place judgments.

6.  The claimant is capable of performing her past relevant work as a housekeeper. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity.

7.  The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision.

(AR 24-30).

On May 31, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981 and 416.1481. On July 30, 2013, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

### A. Background

Plaintiff Patricia A. Norris, was 56 years old on her onset date. She has an eleventh grade education. Plaintiff's past relevant work was as a housekeeper manager and a laborer.

### B. Relevant Medical Evidence

*1. Patel Medical Associates, P.C.*

Plaintiff was treated by Kantilal Patel, M.D., between May 2009 and January 2011 for degenerative joint disease, arthritis, and anxiety, for which Dr. Patel prescribed Xanax and Vicodin. An MRI of the lumbar spine dated December 27, 2010, showed a large herniation at L4-5 to the right of the midline with narrowing of the right neural foramina and deformity of the thecal sac and degenerative disease at L5-S1 with bulging disc with mild neuroforaminal narrowing bilaterally. On January 31, 2011, Plaintiff was seen for a routine follow-up for her arthritis, COPD, hypertension, and degenerative joint disease; her medications were refilled.

Sometime after the January 31, 2011 visit but before June 21, 2011, Dr. Patel completed a "Multiple Impairment Questionnaire" form provided by Plaintiff's attorney. On the undated form, Dr. Patel opined that Plaintiff was able to sit three hours total and stand/walk less than one hour total in an eight-hour workday. She also needed to get up and move around every twenty to thirty minutes when sitting. According to Dr. Patel, Plaintiff could occasionally lift ten pounds. Dr. Patel further opined that Plaintiff was limited in her use of her upper extremities for grasping, turning, and twisting objects. Dr. Patel noted that Plaintiff would have good days and bad days, but would be absent from work more than three times a month as a result of her impairments or treatment. Further,

3

Dr. Patel opined that Plaintiff's condition interfered with her ability to keep her neck in a constant position.

2.  *Alexander Panagos, M.D.*

On June 13, 2011, Plaintiff underwent a consultative examination by Alexander Panagos, M.D. Dr. Panagos was provided with outpatient progress notes dated October 2010, May 2010, March 2010, February 2010, January 2010, December 2009, November 2009, October 2009, September 2009, and August 2009. In his examination of her back, Dr. Panagos noted no deformity or trauma and normal lumbar curvature but recorded bilateral lower lumbar vertebral and paravertebral tenderness. Dr. Panagos made findings of range of motion within normal limits, flexion of 90 degrees, extension of 30 degrees, and lateral flexion on the right and left of 25 degrees. The straight leg raise test was negative bilaterally. The musculoskeletal examination revealed full range of motion in all joints. Dr. Panagos noted no redness, swelling, or thickening. He wrote that Plaintiff was able to bear her own weight, her gait was normal, she could tandem walk, and she did not use an assisting device to walk. Plaintiff had no trouble getting on and off of the examination table, rising from her chair, performing heel and toe walking, or squatting. Her finger grasps and grip strength were both unimpaired bilaterally. Dr. Panagos' relevant clinical impression was chronic lower lumbar pain, arthritis, and herniated disk.

## C. Plaintiff's Hearing Testimony

At the hearing, Plaintiff testified that she is unable to work due to back pain in her lower back that radiated into her neck and down her legs. She claims that her medications "dull the pain" when she first takes them, but that the dulling does not last long. She claims that the pain improves when she lies down. While working as a house keeper, Plaintiff was required to lift fifty pounds, but, due to her back pain, she estimates that she can no longer carry any more then ten pounds. She

testified that she can stand for thirty to forty-five minutes. Plaintiff also has panic attacks every day that are not precipitated by anything. She began having panic attacks before she stopped working, and at times would have to lie down at work until they stopped. Plaintiff lives with her aunt. She stated that she is able to help with the household chores, but "what used to take a couple hours to do will take me all day to do now." (AR 47). Plaintiff and her aunt take their clothes to the laundromat, where they wash, dry, and fold the clothes; she testified that she is "really hurting" by the time they are finished. (AR 49). Her aunt usually drives her anywhere she needs to go, but when her aunt can not drive her, Plaintiff takes public transportation. Her aunt handles all their finances. Plaintiff only socializes with her cousins who live down the street; on occasion they go out to dinner. Plaintiff testified that she has not seen a psychiatrist because she has no health insurance or money to pay for one.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is

not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal of the ALJ's decision, arguing that, in finding Plaintiff not disabled, the ALJ improperly weighed the opinion of Dr. Patel and improperly assessed Plaintiff's credibility. The Commissioner contends that the ALJ considered the record under the appropriate regulatory framework and that substantial evidence supports his decision. The Court considers each of Plaintiff's arguments in turn.

### A. Weight Given to Treating Physician's Opinion

Plaintiff first argues that the ALJ improperly weighed the opinion of her treating physician, Dr. Patel. An ALJ must give the medical opinion of a treating doctor controlling weight as long as the

> treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record . . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this

section in determining the weight to give the opinion. We will always give good reasons . . . for the weight we give to your treating source's opinion.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); SSR 96-8p; SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996). In other words, the ALJ must give a treating physician's opinion controlling weight only if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf*, 602 F.3d at 875.

The factors listed in paragraphs (c)(2)(i) through (c)(6) are the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors such as the familiarity of a medical source with the case. 20 C.F.R. §§ 404.1527(c), 416.927(c). "[I]f the treating source's opinion passes muster under [§ 404.1527(c)(2)], then there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it." *Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir. 2011) (internal quotation marks omitted) (quoting *Hofslien*, 439 F.3d at 376). Courts have acknowledged that a treating physician is likely to develop a rapport with his or her patient and may be more likely to assist that patient in obtaining benefits. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). An ALJ is entitled to discount the medical opinion of a treating physician if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as the ALJ gives good reasons. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Schaaf*, 602 F.3d at 875; *Skarbek*, 390 F.3d at 503. The ALJ cannot pick and choose the evidence that favors his final decision; rather, the ALJ must articulate his analysis well enough for an appellate court to follow and review his reasoning. *Diaz*, 55 F.3d at 307.

In this case, the ALJ discounted Dr. Patel's opinion because it is inconsistent with the examination findings of Dr. Panagos, the consultative examiner. Dr. Patel's opinion was given on a "Multiple Impairment Questionnaire," an undated form provided by Plaintiff's attorney that was completed and returned to Plaintiff's attorney sometime after January 31, 2011, but before June 21, 2011, the date of the accompanying cover letter sent by Plaintiff's attorney to the social security administration. Based on Dr. Patel's opinion, Plaintiff cannot perform even sedentary work, the lowest level of exertional work recognized by the Commissioner. *See* C.F.R. §§ 404.1567(a), 416.967(a). Dr. Patel stated that his opinions were based on clinical findings of lower back pain with lower extremity pain and objective MRI imaging of the lumbar spine. Dr. Patel treated Plaintiff throughout the relevant time period for the pain-related impairments at issue in this case.

In giving little weight to the opinion of Dr. Patel, the ALJ found that Dr. Patel's opinion regarding the severity of Plaintiff's pain was inconsistent with his own treatment notes, which the ALJ described as sparse and as not detailing the objective signs and symptoms supporting the diagnoses of lumbar radiculopathy and sciatic nerve pain. The ALJ noted that a specialist had not corroborated Dr. Patel's diagnoses. The ALJ noted the absence of any documented evidence of the degree of functional limitation opined by Dr. Patel and that there is no evidence in the record that Plaintiff would be limited in the use of her arms and hands if her disease is limited to the lumbar spine. The ALJ noted the lack of any laboratory findings confirming Dr. Patel's diagnosis of rheumatoid arthritis. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a) ("There must be medical signs and laboratory findings which show that the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged . . . .").

The ALJ then contrasted Dr. Patel's "severe assessment" with the largely normal examination findings of Dr. Panagos, the consultative examiner, during the same time period. *See*

(AR 28). The ALJ noted that Dr. Panagos reported only lumbar tenderness and that Plaintiff had no difficulty "performing any special maneuvers, which would not be the case if the claimant's pain were as severe as she and Dr. Patel described." (AR 28). The ALJ continued by contrasting Dr. Patel's functional assessment with his own treatment notes, finding the assessment to be "grossly out of proportion to [his] own notes and the clinical findings of Dr. Panagos." *Id.* The ALJ concluded by surmising that Dr. Patel recorded Plaintiff's subjective statements and crafted a sympathetic opinion to assist Plaintiff in her application for disability benefits.

Nevertheless, the ALJ did not question that Plaintiff's back impairment caused some pain and functional loss. The ALJ rejected the opinions of the state agency reviewing physicians who found that Plaintiff did not have any severe impairment, finding instead that the evidence of record support severe impairments. Rather, the ALJ questioned the severity of Plaintiff's pain, noting that the medical evidence was so mild that it had led the state agency reviewing physicians to find no severe impairment. The ALJ went on to review the MRI results from December 2010 that showed an L4-5 disc herniation with narrowing of the right neural fomina and deformity of the thecal sac and mild L5-S1 disc bulging with mild neuroforaminal narrowing bilaterally. The ALJ found that Dr. Patel did not provide a great deal of treatment overall and that the treatment provided was conservative in nature, consisting of exercise and pain medication. The ALJ then reviewed Plaintiff's activities of daily living and found that they were inconsistent with the level of incapacity she alleged.

First, Plaintiff argues that the ALJ erred by rejecting Dr. Patel's opinion in favor of his own interpretation of the medical evidence and by finding that Dr. Patel's opinions were not supported by sufficient clinical and diagnostic findings. The ALJ did not "play doctor" or make any independent medical findings. Rather, as set out above, the ALJ considered all of the relevant

11

factors, including the detailed examination findings of Dr. Panagos, which are discussed in detail below. Although Plaintiff is correct that, generally, Dr. Patel's treatment notes consistently noted lumbar spine tenderness and muscle spasms, Plaintiff does not identify any indication in the treatment notes as to the degree of those symptoms or that Plaintiff has any limitations as a result. Plaintiff does not identify any clinical or diagnostic findings in the record that support the extreme limitations in Dr. Patel's opinion.

Second, Plaintiff argues that the ALJ improperly considered that Plaintiff had not seen a specialist, noting that Dr. Patel recommended an evaluation for physical therapy and for pain management, that Plaintiff did not have health insurance, and that Plaintiff could not afford to treat with a specialist. First, nowhere in the progress notes completed over the course of the treating relationship did Dr. Patel indicate that more aggressive treatment was needed or that, but for financial limitations, such treatment would have been pursued. Dr. Patel only suggested evaluation for physical therapy and pain management for the first time on the questionnaire provided by Plaintiff's attorney sometime after January 31, 2011. Next, nowhere in the record did Plaintiff contend that she was unable to get treatment for her physical impairments due to a lack of health insurance. And, her hearing testimony was that she was unable to afford mental health treatment; she did not testify that Dr. Patel proposed treatment for her back that she did not pursue because of a lack of funds.

Third, Plaintiff argues that the ALJ erred by concluding that Plaintiff's lumbar spine impairment could not cause problems with her arms; Plaintiff notes that Dr. Patel wrote that these limitations were caused by Plaintiff's "arthritis and degenerative disc disease." (Pl. Br. 7). The ALJ correctly noted that there is no evidence in the treatment record that Plaintiff had any limitations in her arms resulting from her degenerative disc disease. The record's notations are consistently to

12

lumbar back pain. Moreover, Plaintiff misstates Dr. Patel's explanation on the form provided by counsel, which provides that Plaintiff has "degenerative *joint* disease." All of the references to degenerative joint disease on the form are in relation to her lumbar pain. There is no evidence in the record that Plaintiff's degenerative joint disease affects her arms and hands. Notably, Dr. Panagos' examination of Plaintiff was entirely normal in relation to the upper extremities.

Fourth, Plaintiff contests the ALJ's reliance on Dr. Panagos' examination findings, arguing that, like Dr. Patel, Dr. Panagos found that Plaintiff had lower lumbar tenderness. Plaintiff reasons that it was wrong for the ALJ to treat Dr. Panagos' findings as contradictory to those of Dr. Patel. Plaintiff wholly fails to acknowledge Dr. Panagos' otherwise normal examination findings. Although Dr. Panagos noted lumbar tenderness, he found normal lumbar curvature, no deformity of the back, no trauma, range of motion within normal limits, and negative straight leg raises bilaterally. Dr. Panagos found full range of motion in all joints with no redness, swelling, or thickening of any joints noted. Plaintiff was able to bear her own weight, and her gait was normal. Dr. Panagos noted that Plaintiff had no difficulty getting on and off the examination table and no difficulty getting up from the chair. She was able to heel and toe walk, to squat, and walk with a tandem gait. Dr. Panagos found that Plaintiff's finger grasp and hand grip were unimpaired bilaterally. Dr. Panagos noted that Plaintiff did not appear to be in any acute distress at the time of the examination.

Plaintiff also seems to suggest that, because Dr. Panagos did not give a direct opinion on Plaintiff's work-related functioning, the ALJ erred by relying on his findings, citing inapposite, out-of-circuit opinions. In *Hutsell v. Massanari*, 259 F.3d 707, 217 (8th Cir. 2001), the court found that a "treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting an ALJ's functional capacity determination when the doctor was not asked to express an

opinion on the matter and did not do so, particularly when that doctor did not discharge the claimant from treatment." The ALJ in this case did not rely on the treating doctor's silence. In *Rosa v. Callahan*, 168 F.3d 72, 81 (2d Cir. 1999), the court recognized its prior holding that "an ALJ's decision to reject a treating physician's diagnosis merely on the basis that other examining doctors reported no similar findings" when those examining doctors "were never asked what work or activity, such as sedentary employment, [the claimant] could perform and hence expressed no opinion on that subject." Plaintiff is correct that Dr. Panagos did not give an RFC opinion. However, the ALJ did not rely on Dr. Panagos' failure to report limitations similar to Dr. Patel's. Rather, the ALJ relied on Dr. Panagos' examination findings and Dr. Patel's own unremarkable treatment records to discount Dr. Patel. Finally, in *Allen v. Bowen*, 881 F.2d 37, 41 (3d Cir. 1989), the court reaffirmed the principle, like that in the Seventh Circuit Court of Appeals, that "where a report of a treating physician conflicts with that of a consulting physician, the ALJ must explain on the record the reasons for rejecting the opinion of the treating physician." The court further found that there was no conflict in that case just because the consultative physician was silent on the issue of the claimant's limitations. *Id*. at 41-42. Again, the ALJ in this case did not rely on Dr. Panagos' silence on the issue of limitations but rather on the evidence in Dr. Panagos' records of his physical examination of Plaintiff regarding the lack of limitation resulting from her back impairment and the silence in Dr. Patel's own treatment notes.

Next, Plaintiff argues that the ALJ failed to point to any specific evidence to justify his conclusion that Dr. Patel was biased in Plaintiff's favor by finding Plaintiff unable to work. Courts recognize that doctors "will often bend over backwards to assist a patient in obtaining benefits." *Hofslien*, 439 F.3d at 377. As set forth above, the ALJ only came to the conclusion that Dr. Patel gave a sympathetic opinion after fully discussing the lack of support in Dr. Patel's own treatment

records and the examination findings of Dr. Panagos. The ALJ properly supported his suspicion regarding Dr. Patel's motivations.

Thus, contrary to Plaintiff's assertions, Dr. Patel's opinion was not based on appropriate clinical and diagnostic evidence and his opinion was contradicted by other substantial evidence in the record. *See* SSR 96-2p. The ALJ properly considered the length of Dr. Patel's treating relationship with Plaintiff. The ALJ did not err in finding Dr. Patel's functional assessment to be out of proportion with his own progress notes and the clinical finding of Dr. Panagos. These inconsistencies support the ALJ's decision not to give controlling weight to Dr. Patel's opinion. *Clifford*, 227 F.3d at 871. And, the ALJ sufficiently articulated his reasons for giving Dr. Patel's opinion less weight. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). Notably, Plaintiff does not identify any medical evidence of record or any portions of Dr. Patel's treatment notes that support the extreme position in the opinion. Plaintiff's argument is largely formal without support from the record.

Finally, in the concluding paragraph of this section, Plaintiff contends that the ALJ erred in his determination of Plaintiff's RFC by "failing to cite to any specific medical facts or nonmedical evidence that supports the RFC finding." (Pl. Br. 10). The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal, rather than a medical, decision reserved to the ALJ who need not rely solely on the opinions of physicians. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(2); *Diaz*, 55 F.3d at 306 n.2; *Anderson v. Colvin*, No. 13 C 0788, 2014 WL 5430275, at *31 (E.D. Wis. Oct. 25, 2014) (citing *Aguilera v. Colvin*, No. 13 C 1248, 2014 WL 3530763, at *24 (E.D. Wis. July 15, 2014) ("[T]he ALJ need not

in determining RFC rely on any particular doctor's opinion; rather, he must consider the entire record.")).

The ALJ determined that Plaintiff had the RFC to perform light work, which

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff argues specifically that the ALJ "superimposed" his layman's interpretation of the MRI and examination findings, failed to consider the fact that Plaintiff could not afford treatment with a specialist, and rejected all medical opinions in the record. (Pl. Br. 10) (citing *Eakin v. Astrue*, 432 F. App'x 607 (7th Cir. 2011); *Suide v. Astrue*, 371 F. App'x 684 (7th Cir. 2010)). Plaintiff mischaracterizes the ALJ's analysis. The ALJ provided a lengthy discussion of Plaintiff's testimony regarding all her impairments and the information in the medical records. The ALJ recognized that the MRI from December 2010 showed a herniated disc, but, as discussed above, found that Dr. Panagos' subsequent examination on June 13, 2011, demonstrated that Plaintiff was not as limited by her back condition as she contended. The ALJ recognized that Plaintiff testified she could not afford mental health treatment; there is no evidence in the record that she did not pursue recommended treatment for her back because of a lack of funds or insurance. Finally, although the ALJ rejected Dr. Patel's opinion as unsupported by the record, he based his decision largely on the mild examination findings of Dr. Panagos that were not contradicted by Dr. Patel's treating records.

Thus, there is no "evidentiary deficit" or "paucity of analysis." *See Suide*, 371 F. App'x at 690; *Eakin*, 432 F. App'x at 611.

Overall, the ALJ described Plaintiff's lumbar disc disease, lower back pain, motor loss, neurological deficits, and activities of daily living. After doing so, he concluded that Plaintiff could perform light work despite each of the impairments. This is consistent with the Seventh Circuit Court of Appeals' repeated assertion that "an ALJ's 'adequate discussion' of the issues need not contain 'a complete written evaluation of every piece of evidence.'" *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (quoting *Schmidt*, 395 F.3d at 744). The ALJ's discussion here was more than adequate. Notably, Plaintiff offers no specific analysis of the medical evidence to show that a more restrictive RFC is supported by the record. The ALJ did not err in the weight he gave to the treating physician's opinion.

## B. Plaintiff's Credibility

Plaintiff contends that remand is required because the ALJ made several errors in assessing her credibility. The ALJ must consider a claimant's statements about her symptoms, such as pain, and how the claimant's symptoms affect her daily life and ability to work. See 20 C.F.R. §§ 404.1529(a), 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id.* In determining whether statements of symptoms contribute to a finding of disability, the regulations set forth a two-part test: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. *Id.*

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)      The individual's daily activities;
(2)      Location, duration, frequency, and intensity of pain or other symptoms;
(3)      Precipitating and aggravating factors;
(4)      Type, dosage, effectiveness, and side effects of any medication;
(5)      Treatment, other than medication, for relief of pain or other symptoms;
(6)      Other measures taken to relieve pain or other symptoms;
(7)      Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p, at *6. "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)).

As an initial matter, Plaintiff notes that the ALJ used "boilerplate" language in the credibility determination by stating that "the claimant's statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 27); *see Bjornson v. Astrue*, 671 F.3d 640, 645 (7th

Cir. 2012).[1] However, an ALJ's use of the boilerplate language does not amount to reversible error if he "otherwise points to information that justifies his credibility determination." *Pepper*, 712 F.3d at 367-68. In this case, the use of "boilerplate" language does not require remand. The ALJ considered the required factors in assessing Plaintiff's credibility and analyzed the evidence to explain his credibility determination while assessing the severity of Plaintiff's impairment. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). Plaintiff also contends that use of the boilerplate language is cause for remand because the ALJ weighed Plaintiff's credibility against an RFC that is not supported by any medical evidence. However, as stated above, the ALJ provided an adequate discussion of all impairments and medical records in his RFC determination.

In addition, Plaintiff argues that the ALJ's credibility determination was insufficient to find Plaintiff not credible. First, Plaintiff asserts that, because the findings of Dr. Panagos mirror those of her treating physician, Dr. Patel, the ALJ erred in finding that Dr. Panagos' report revealed only mild abnormalities. However, as discussed in the previous section, the ALJ did not err in the weight given to Dr. Patel's opinion, Plaintiff fails to acknowledge the largely normal findings from Dr. Panagos' physical examination of her, and Plaintiff has not identified any findings from Dr. Patel's treatment records that support the extent of her claimed limitations. Thus, the ALJ properly relied on Dr. Panagos' examination findings in determining Plaintiff's credibility. *See Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002) (citing 20 C.F.R. § 416.929(c)(2); SSR 96-7p).

---

[1] Recently, the Seventh Circuit Court of Appeals has rekindled its criticism of the boilerplate language because the language's "implication . . . is that residual functional capacity (ability to engage in gainful employment) is determined before all the evidence relating to the claimed disability assessed, whereas in truth all that evidence is material to determining the claimant's residual functional capacity." *Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014); *see also Goins v. Colvin*, 764F.3d 677, 681 (7th Cir. 2014).

Second, Plaintiff contends that the ALJ improperly used "debilitating pain and functional loss" as a standard to determine that Plaintiff is not disabled. (Pl. Br. 13). Plaintiff misunderstands the ALJ's use of those words. After discussing the medical records from Dr. Patel in relation to Plaintiff's allegations of severe chronic back pain, the ALJ concluded, "However, there is no indication in these records that the claimant suffered from debilitating pain and functional loss." (AR 27). The ALJ did not use "debilitating pain and function loss" as a disability standard; rather, the ALJ used the expression to describe the level of pain from which Plaintiff herself claims to be suffering.

Third, Plaintiff argues that she gave detailed testimony on her symptoms and resulting limitations, her limited activities of daily living, and her lack of response to treatment and that all of this testimony is consistent with the underlying record. However, Plaintiff offers no analysis of which statements are consistent with which portions of the underlying record. Plaintiff then contends that the ALJ failed to consider Plaintiff's testimony under the factors set out in SSR 96-7p. Plaintiff is incorrect. The ALJ sufficiently discussed the various factors that support the credibility determination, including the nature and alleged severity of Plaintiffs's symptoms; the exacerbating and alleviating factors; the absence of diagnostic or clinical evidence to support Plaintiff's alleged severity of back pain; normal gait; conservative treatment; and evidence of Plaintiff's activities, which included washing dishes, mopping the floor, doing laundry, and caring for her personal needs.

The ALJ considered Plaintiff's alleged debilitating pain but found that her statements were not supported by the record. "Although a claimant can establish the severity of [her] symptoms by [her] own testimony, [her] subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir.

2007) (citing *Carradine v. Barnhart*, 360 F.3d 751, 764 (7th Cir. 2004)). "[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (citing *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005)). Almost every citation to the record in Plaintiff's brief is to either her own testimony or the opinion given by Dr. Patel, which as discussed above, the ALJ properly found to be not supported by medical evidence in the record. Substantial evidence supports the ALJ's credibility finding, and the Court finds that it is not patently wrong.

## CONCLUSION

Finding that Plaintiff received a full and fair review of her claims, the Court hereby **DENIES** the relief sought in Plaintiff's Brief [DE 17] and **AFFIRMS** the final decision of the Commissioner of Social Security.

So ORDERED this 19th day of November, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record